UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 12-20757-CR-MARTINEZ-MCALILEY

UNITED STATES OF AMERICA,

vs.

KAREN KALLEN-ZURY, et al.,

Defendants.

_____/

## COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. After I've completed these instructions you will go to the jury room and begin your discussions – what we call your deliberations.

You must decide whether the Government has proved the specific facts necessary to find a Defendant guilty beyond a reasonable doubt.

1

Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice against a Defendant or the Government.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the Court's instructions on the law.

The indictment or formal charge against a Defendant isn't evidence of guilt. The law presumes every Defendant is innocent. A Defendant does not have to prove her or his innocence or produce any evidence at all. A Defendant does not have to testify, and if a Defendant chose not to testify, you cannot consider that in any way while making your decision. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find a Defendant not guilty.

The Government's burden of proof is heavy, but it doesn't have to prove a Defendant's guilt beyond all possible doubt.  The Government's proof only has to exclude any "reasonable doubt" concerning a Defendant's guilt.

A "reasonable doubt" is a real doubt, based on your reason and common sense after you've carefully and impartially considered all the evidence in the case.

"Proof beyond a reasonable doubt" is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs.  If you are convinced that a Defendant has been proved guilty beyond a reasonable doubt, say so.  If you are not convinced, say so.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses, the exhibits admitted, and any stipulations entered into by the parties. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

4

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean  a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

A defendant has a right not to testify.  But if a Defendant did testify, you should decide whether you believe that Defendant's testimony in the same way as that of any other witness.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

You must consider some witnesses' testimony with more caution than others.

In this case, the Government has made a plea agreement with a witness in exchange for his or her testimony.   Such "plea bargaining," as it's called, provides for the possibility of a lesser sentence than a witness would normally face.  Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

But a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

And the fact that a witness has pleaded guilty to an offense isn't evidence of the guilt of any other person.

You've been permitted to take notes during the trial.  Most of you – perhaps all of you – have taken advantage of that opportunity.

You must use your notes only as a memory aid during deliberations.  You must not give your notes priority over your independent recollection of the evidence.  And you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

The indictment charges 14 separate crimes, called "counts." Each count has a number and refers to one or more Defendants in this case. You'll be given a copy of the indictment to refer to during your deliberations.

Count 1 charges that Karen Kallen-Zury, Daisy Miller, and Michele Petrie knowingly and willfully conspired to commit wire fraud and health care fraud.

Count 9 charges that Karen Kallen-Zury, Daisy Miller, Michele Petrie, and Christian Coloma knowingly and willfully conspired to pay and receive health care bribes and kickbacks and to defraud the United States Department of Health and Human Services.

Counts 2-8 and Counts 10-14 charge that certain of the Defendants committed what are called "substantive offenses," specifically wire fraud, health care fraud, and the payment of health care bribes and kickbacks. I will explain the law governing those substantive offenses in a moment.

But first note that the Defendants that are charged in Count 1 or Count 9 are not charged in that count with committing a substantive offense – they are charged with conspiring to commit that offense.

I will also give you specific instructions on conspiracy.

Count 1 charges Karen Kallen-Zury, Daisy Miller, and Michele Petrie with conspiracy to commit wire fraud and health care fraud.

It's a Federal crime to knowingly and willfully conspire or agree with someone to do something that, if actually carried out, would result in the crime of wire fraud or health care fraud.

A "conspiracy" is an agreement by two or more persons to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan, or that those who were members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

A Defendant can be found guilty of this conspiracy offense only if all the following facts are proved beyond a reasonable doubt:

(1)     two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan, that is a plan to commit wire fraud or health care fraud, as charged in the indictment; and

(2)     a Defendant knew the unlawful purpose of the plan and willfully joined in it.

11

A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If a Defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan – and willfully joined in the plan on at least one occasion – that's sufficient for you to find a Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy.  Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

Count 9 charges Karen Kallen-Zury, Daisy Miller, Michele Petrie, and Christian Coloma with conspiracy to pay and receive health care bribes and kickbacks and defraud the United States Department of Health and Human Services.

A Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

    (1)      two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

    (2)      a Defendant knew the unlawful purpose of the plan and willfully joined in it;

    (3)      during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

    (4)      the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing  some object of the conspiracy.

An "overt act" is any transaction or event, even one that may be entirely innocent when viewed alone, that a conspirator commits to accomplish some object of the conspiracy.

Once again, the Government does not have to prove that all the people named in the indictment were members of the plan, or that those who were members made any kind of formal agreement.  The heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that

the conspirators succeeded in carrying out the plan.

A person may be a conspirator without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If a Defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for you to find a Defendant guilty.

But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy.  A person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

In this case, regarding the alleged conspiracy, the indictment charges – in Count 1 – that Karen Kallen-Zury, Daisy Miller, and Michele Petrie conspired to commit wire fraud and to commit health care fraud.  In Count 9, the indictment charges that Karen Kallen-Zury, Daisy Miller, Michele Petrie, and Christian Coloma conspired to pay health care bribes and kickbacks, to receive health care bribes and kickbacks, and to defraud the United States Department of Health and Human Services.

In other words, the Defendants that are charged in Count 1 are charged with conspiring to commit more than one substantive crime.

The Government does not have to prove that a Defendant willfully conspired to commit all the substantive crimes charged in each conspiracy.  It is sufficient if the Government proves beyond a reasonable doubt that a Defendant willfully conspired to commit one of the crimes alleged in each conspiracy.

But to return a verdict of guilty, you must all agree on which of the crimes a Defendant conspired to commit.

Counts 2-6 charge Karen Kallen-Zury, Daisy Miller, and Michele Petrie with wire fraud.

It's a Federal crime to use interstate wire communications to carry out a scheme to defraud someone else.

A Defendant can be found guilty of this crime only if all the following facts are  proved beyond a reasonable doubt:

(1)     a Defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

(2)     the false pretenses, representations, or promises were about a material fact;

(3)     a Defendant acted with the intent to defraud; and

(4)     a Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The term "scheme to defraud" includes any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact that the speaker knows is untrue or makes with reckless indifference to the truth, and makes with the intent to defraud.  A statement or representation may be "false" or "fraudulent" when it is a half truth, or effectively conceals a

16

material fact, and is made with the intent to defraud.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

The "intent to defraud" is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

The Government does not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the material transmitted by interstate wire was itself false or fraudulent; or that using the wire was intended as the specific or exclusive means of carrying out the alleged fraud; or that the Defendant personally made the transmission over the wire. And it doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone.

To "cause" a wire communication to be used is to do an act knowing that the use of the wire will follow in the ordinary course of business or where that use can reasonably be expected to follow.

Each separate use of the interstate wire communications as part of the scheme to defraud is a separate crime.

Counts 7-8 of the Indictment charge Karen Kallen-Zury and Daisy Miller with health-care fraud. It's a federal crime to knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud a health-care benefit program, or to get any of the money or property owned by, or under the custody or control of, a health-care benefit program by means of false or fraudulent pretenses, representations, or promises.

A Defendant can be found guilty of this offense only if all the following facts are proved beyond a reasonable doubt:

(1)     a Defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a health-care benefit program, by means of false or fraudulent pretenses, representations, or promises;

(2)     the false or fraudulent pretenses, representations, or promises related to a material fact;

(3)     a Defendant acted willfully and intended to defraud; and

(4)     a Defendant did so in connection with the delivery of or payment for health-care benefits, items, or services.

"Health-care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

A "scheme to defraud" includes any plan or course of action intended to

deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises relating to a material fact.

A statement or representation is "false" or "fraudulent" if it is about a material fact that the speaker knows is untrue or makes with reckless indifference as to the truth and makes with intent to defraud. A statement or representation may be "false" or "fraudulent" when it's a half truth or effectively conceals a material fact and is made with the intent to defraud.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with "intent to defraud" means to do something with the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

The Government doesn't have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone. What must be proved beyond a reasonable doubt is that a Defendant knowingly and willfully attempted or carried out a scheme substantially similar to the one alleged in the indictment.

Counts 10-14 of the indictment charge Karen Kallen-Zury and Christian Coloma with five separate violations of the Anti-Kickback Statute.

A Defendant can be found guilty of this offense only if the following facts are proven beyond a reasonable doubt:

(1)     a Defendant offered or paid any remuneration (including any bribe or kickback), directly or indirectly, openly or secretly;

(2)     the payment or offer of payment by a Defendant was made to a person to induce that person to refer an individual to a person for the furnishing or arranging for the furnishing of an item or service that could be paid for, in whole or in part, by a Federal health care program which, in this case, is Medicare; and

(3)     a Defendant did so knowingly and willfully.

The Government need not prove that the only or primary purpose of the remuneration, kickback, or bribe that was paid was for the referral of Medicare patients.  If the Government proves beyond a reasonable doubt that one of the purposes of making the payment charged in each of Counts 10-14 was to induce the referral of Medicare patients to Hollywood Pavilion, that is sufficient.

As used in these instructions, the term "remuneration" means the transfer of anything of value from one person or entity to another person or entity. Remuneration includes money.  Remuneration can be direct or indirect.

As used in these instructions the term "bribe" means the corrupt transfer of

anything of value from one person or entity to another person or entity usually to accomplish some unlawful result or to accomplish some lawful result by some unlawful means.

As used in these instructions the term "kickback" means the return of a portion of the original payment.

As used in these instructions the term "Federal health care program" means any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government

During a conspiracy, if a conspirator commits a crime to advance the conspiracy toward its goals, then in some cases a coconspirator may be guilty of the crime even though the coconspirator did not participate directly in the crime.

So regarding Counts 2-8, if you have first found Karen Kallen-Zury and/or Daisy Miller and/or Michele Petrie guilty of the crime of conspiracy as charged in Count 1, you may also find that Defendant guilty of any of the crimes charged in Counts 2-8 even though that Defendant did not personally participate in the crime. Regarding Counts 10-14, if you have found Karen Kallen-Zury and/or Christian Coloma guilty of the crime of conspiracy charged in Count 9, you may also find that Defendant guilty of any of the crimes charged in Counts 10-14 even though that Defendant did not personally participate in the crime. To do so, you must find beyond a reasonable doubt:

(1)     during the conspiracy a conspirator committed the additional crime charged to further the conspiracy's purpose;

(2)     a Defendant was a knowing and willful member of the conspiracy when the crime was committed; and

(3)     it was reasonably foreseeable that a coconspirator would commit the crime as a consequence of the conspiracy.

It's possible to prove a Defendant guilty of a crime even without evidence that a Defendant personally performed every act charged.

Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others.

A Defendant "aids and abets" a person if a Defendant intentionally joins with the person to commit a crime.

A Defendant is criminally responsible for the acts of another person if a Defendant aids and abets the other person. A Defendant is also responsible if a Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

But finding that a Defendant is criminally responsible for the acts of another person requires proof that a Defendant intentionally associated with or participated in the crime – not just proof that a Defendant was simply present at the scene of a crime or knew about it.

In other words, you must find beyond a reasonable doubt that a Defendant was a willful participant and not merely a knowing spectator.

"Good faith" is a complete defense to a charge that requires intent to defraud.  A Defendant isn't required to prove good faith.  The Government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken.  Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.

Karen Kallen-Zury's theory of defense is a defense of good faith.  Karen Kallen-Zury maintains that she operated Hollywood Pavilion believing that it had appropriate policies and procedures and that those policies and procedures were followed.  Karen Kallen-Zury maintains that she had a good faith belief that payments to marketers and managers were lawful and legal.

Daisy Miller's theory of defense is a defense of good faith.  Daisy Miller maintains that she had a good faith belief that all of the treatment rendered to psychiatric patients at Hollywood Pavilion's Inpatient Facility was rendered in full compliance with all of Medicare's rules and regulations.  Daisy Miller maintains that she had a good faith belief that the relationship between Hollywood Pavilion and the halfway house owners were lawful and legal.

Christian Coloma's theory of defense is a defense of good faith.  Christian Coloma maintains that he had an honestly held opinion and belief that it was lawful for Hollywood Pavilion to contract with and compensate individuals who appeared to be providing legitimate marketing and case management services and that these services and compensation were lawful and legal.

Michele Petrie's theory of defense is a defense of good faith.  Michele Petrie maintains that she had an honestly held opinion and an honestly formed belief that all employment and compensation decisions made by the Hollywood Pavilion management were lawful and legal.

Evidence of a Defendant's character traits may create a reasonable doubt.

You should consider testimony that a Defendant is an honest and law-abiding citizen along with all the other evidence to decide whether the Government has proved beyond a reasonable doubt that a Defendant committed an offense.

If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist.

"Deliberate ignorance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant believes or has reason to believe a fact exists but deliberately avoids learning about that fact so that he or she can later deny knowledge of that fact.

So you may find that a defendant knew about a certain fact if you determine beyond a reasonable doubt that the defendant (1) actually knew about the fact, or (2) had every reason to know but deliberately closed his or her eyes.

But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew about the fact.

During this trial you have heard testimony regarding Medicare's civil rules and regulations and opinion regarding ethical standards and standards of care for psychiatric inpatient treatment and psychiatric outpatient treatment.

I caution you that a violation of these civil statutes, rules, regulations, ethical standards or standards of care is not a crime. This is not a civil case. The Defendants are not on trial for civil violations, or even, medical malpractice. Even if you find the claims to Medicare were not allowable under the applicable statutes, rules, and regulations, a Defendant cannot be convicted of a crime merely for breaching civil statutes, rules, regulations, ethical standards, and standards of care applicable to her or his conduct.

However, Medicare's rules and regulations, ethical standards, and standards of care may be relevant in determining whether a Defendant acted with criminal intent, that is, knowingly, willfully, and with the intent to defraud Medicare. That is how you may consider this evidence.

31

You'll see that the indictment charges that a crime was committed "on or about" a certain date, or on an "approximate" date. The Government doesn't have to prove that the crime occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.

The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.

The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that her or his conduct may be violating.

Each count of the indictment charges a separate crime against one or more of the Defendants. You must consider each crime and the evidence relating to it separately. And you must consider the case of each Defendant separately and individually. If you find a Defendant guilty of one crime, that must not affect your verdict for any other crime or any other Defendant.

I caution you that each Defendant is on trial only for the specific crimes charged in the indictment. You're here to determine from the evidence in this case whether each Defendant is guilty or not guilty of those specific crimes.

You must never consider punishment in any way to decide whether a Defendant is guilty. If you find a Defendant guilty, the punishment is for the Judge alone to decide later.

Your verdict, whether guilty or not guilty, must be unanimous – in other words, you must all agree.  Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So you must discuss the case with one another and try to reach an agreement.  While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and will speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the form, sign it,  date it, and carry it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the marshal.  The marshal will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom.  But I caution you not to tell me how many jurors have voted one way or the other at that time.

35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

12-20757

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)
42 U.S.C. § 1320a-7b(b)(2)
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

KAREN KALLEN-ZURY,
DAISY MILLER,
CHRISTIAN COLOMA,
MICHELE PETRIE,

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.     The Medicare Program ("Medicare") was a federal health care program providing

benefits to persons who are over the age of sixty-five or disabled.

2.     Medicare was a "health care benefit program," as defined by Title 18, United

States Code, Section 24(b).

3.      Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4.      The Medicare program covered reimbursement for inpatient hospitalization treatment for mental illness ("Inpatient Treatment") and also covered billings for outpatient psychiatric treatment for mental illness ("Outpatient Treatment") that is provided in connection with a psychiatric hospital.

5.      For a psychiatric hospital to properly bill and be paid by Medicare for Inpatient Treatment and/or Outpatient Treatment, the patient must, among other things, qualify for the treatment under Medicare's established rules and regulations.  The treatment must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.  Specifically, for a Psychiatric Hospital to properly bill and be paid by Medicare for Inpatient Treatment, among other things:  (1) the patient must (a) not be able to be actively managed at a lower level of care, and (b) the patient must require 24-hour, active treatment; (2) the treatment (a) must be tailored to the specific needs of the individual patient through a written treatment plan developed by the physician and staff; (b) must be administered on a 24-hour basis; (c) must be structured and intensive; (d) requires the treating physician to have periodic consultations and conferences with the treating therapists about the patient; (e) requires the treating physician to review the patient's medical record; (f) requires the treating physician to see the patient, face-to-face, at least once a week and typically five times per week; and (g) requires the physician to supervise the patient's treatment on a daily basis; and (3) the documentation must include: (a) a physician's certification justifying the patient's admission to a Psychiatric Hospital; (b) a qualifying psychiatric diagnosis; (c) an initial

2

psychiatric evaluation; (d) progress notes from treating personnel, including the treating physician; (e) physician's orders; (f) a treatment plan; and (g) a physician recertification, if applicable.

6.      For a Psychiatric Hospital to properly bill and be paid by Medicare for Outpatient Treatment, among other things: (1) the patient must have a qualifying psychiatric diagnosis; (2) the treatment (a) must be tailored to the individual patient and established by the physician; (b) must be periodically evaluated by the physician; (c) requires the physician to periodically consult with the treating therapists and staff; (d) requires the physician to review the patient's medical records; (e) requires the physician to supervise and direct the treating therapists; and (f) requires the physician to periodically see the patient; and (3) the documentation must state (a) the patient's symptoms; (b) the patient's medical history; (c) the results of procedures and tests; and (d) the patient's ability to participate in, and benefit from, treatment.

7.      If any of the requirements identified in paragraphs 5 and 6 of the General Allegations section of this Indictment were not satisfied, Medicare would not pay the claim.

8.      In addition, Medicare would not pay claims procured through bribes or kickbacks. Nor would Medicare pay claims where the required documentation for the purported service rendered was not completed at the time the claim was submitted to Medicare for payment.

9.      Inpatient Treatment was billed to Medicare's Part A Trust Fund ("Medicare Part A"). Medicare Part A is administered in Florida by a contractor which, pursuant to contract with the United States Department of Health of Human Services, receives, adjudicates, and pays Medicare Part A claims submitted to it by psychiatric hospitals for Inpatient Treatment.

10.      Outpatient Treatment was billed to Medicare's Part B Trust Fund ("Medicare Part B"). Medicare Part B is administered in Florida by a contractor, which, pursuant to contract with

3

the United States Department of Health of Human Services, receives, adjudicates and pays Medicare Part B claims submitted to it by psychiatric hospitals for Outpatient Treatment.

11.     Medicare regulations required certified billing entities providing Inpatient Treatment and Outpatient Treatment to Medicare patients to maintain, for at least six years, complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted.

12.     Medicare regulations required inpatient psychiatric hospitals certified to bill Medicare to submit reports to Medicare ("Cost Reports") which, among other things, were used by Medicare to determine how much, if any, additional compensation Medicare owed to the inpatient psychiatric hospital for costs that were incurred by the hospital during the preceding fiscal year and compensable under Medicare's guidelines.

13.     Medicare regulations required inpatient psychiatric hospitals certified to bill Medicare to send reports to Medicare ("Credit Balance Reports") certifying how much, if at all, Medicare had overpaid the certified billing entity the previous fiscal quarter for services rendered.  If the Credit Balance Reports showed that Medicare had overpaid an inpatient psychiatric hospital, the inpatient psychiatric hospital was required to re-pay the amount of the overpayment to Medicare.

## RELEVANT ENTITIES AND DEFENDANTS

14.     Hollywood Pavilion, LLC ("HP") was a Florida corporation established in at least 2001 and headquartered in Hollywood, Florida. HP maintained at least two different locations – one purporting to offer Inpatient Treatment (the "Inpatient Facility") and the other purporting to offer Outpatient Treatment (the "Outpatient Facility").  From 2003 to September 2012, HP billed

4

Medicare for mental health services, including but limited to Inpatient Treatment and Outpatient Treatment, at various times.

15.    Defendant **KAREN KALLEN-ZURY**, a resident of Broward County, was the Chief Executive Officer and a registered agent of HP.

16.    Defendant **DAISY MILLER**, a resident of Broward County, was the Chief Clinical Officer at HP's Inpatient Facility.

17.    Defendant **CHRISTIAN COLOMA**, a resident of Broward County, was a physical therapy director associated with HP and also handled certain administrative matters for HP.

18.    Defendant **MICHELE PETRIE**, a resident of Broward County, was the Director of HP's Outpatient Facility.


## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.    Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From in or around at least April 2003 to in or around at least September 2012, in Miami-Dade and Broward Counties in the Southern District of Florida and elsewhere, the defendants,

**KAREN KALLEN-ZURY,**
**DAISY MILLER,**
**and**
**MICHELE PETRIE,**

5

did knowingly and willfully that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

a.    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.    to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and their co-conspirators, to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for services that were medically unnecessary, that were not eligible for Medicare

6

reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and who were not eligible to receive such services under Medicare's guidelines; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.      From in or around at least April 2003 to in or around at least September 2012, **KAREN-KALLEN ZURY, DAISY MILLER,** and **MICHELE PETRIE,** and others devised and participated in a scheme to pay illegal bribes and kickbacks to the Patient Brokers in return for referring Medicare beneficiaries to HP so that HP could bill Medicare for Inpatient Treatment and/or Outpatient Treatment on behalf of those Medicare beneficiaries.

5.      In or around July 2004, **KAREN KALLEN-ZURY** submitted, and caused to be submitted, documents to Medicare representing that **KALLEN-ZURY** would abide by all applicable Medicare regulations. These documents plainly stated that payment of a claim by Medicare was conditioned on compliance with the Anti-Kickback Statute – that is, a claim would be false and would not be paid if it was submitted on behalf of a beneficiary who was procured through bribes and kickbacks.

6.      **KAREN KALLEN-ZURY, DAISY MILLER,** and **MICHELE PETRIE** submitted and caused to be submitted claims for Medicare beneficiaries who were procured

through bribes and kickbacks.

7.     In order to conceal the payment of bribes and kickbacks at HP from Medicare and state regulators, **KAREN KALLEN-ZURY** and others created and caused to be created false and fraudulent contracts between HP and certain Patient Brokers.  In these bogus contracts, the Patient Brokers purported to provide legitimate services to HP, including but not limited to case management services and marketing services.  In fact, however, the Patient Brokers would be paid illegal bribes and kickbacks by HP to refer Medicare beneficiaries to HP for mental health treatment.

8.     In order to further conceal the payment of bribes and kickbacks at HP from Medicare and state regulators, and at the direction of **KAREN KALLEN-ZURY** and others, certain Patient Brokers were instructed to create false and fraudulent invoices which were submitted to HP for payment.  These false invoices would purport to document legitimate services rendered by certain Patient Brokers, including case management and marketing services. The purpose of these false and fraudulent invoices was to deceive Medicare, state regulators, and others into believing that the Patient Brokers were rendering legitimate services to HP on a regular basis.

9.     In periodic Cost Reports distributed to Medicare by HP, and to further conceal the payment of bribes and kickbacks from Medicare and to unlawfully enrich herself and others, **KAREN KALLEN-ZURY** caused to be certified Cost Reports to Medicare identifying certain expenses as reimbursable Medicare expenses when, in fact, these expenses were kickback payments to Patient Brokers.

10.     Additionally, in periodic Cost Reports distributed to Medicare by HP, **KAREN KALLEN-ZURY** and others certified and caused to be certified documents in which certain

8

payments to **KALLEN-ZURY** and entities affiliated with **KALLEN-ZURY** were classified as Medicare reimbursable expenses when, in fact, these payments were not reimbursable Medicare expenses.

11.   Patient Brokers working with HP would refer Medicare beneficiaries to HP's Inpatient Facility and HP's Outpatient Facility who did not qualify for Inpatient Treatment and/or Outpatient Treatment under Medicare's established standards. **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE,** and others caused HP to admit these unqualified Medicare beneficiaries to the Inpatient Facility and the Outpatient Facility so that HP could bill Medicare on behalf of these beneficiaries.

12.   **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE,** and others at HP billed and caused Medicare to be billed for Inpatient Treatment and Outpatient Treatment for services that were never rendered and for services that did not qualify for reimbursement by Medicare.

13.   To conceal the fraud scheme, **KAREN KALLEN-ZURY, DAISY MILLER,** and **MICHELE PETRIE** caused false, inaccurate, and misleading information to be included in patient files and related documents for Medicare beneficiaries who were purportedly receiving mental health treatment at HP.

14.   **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE,** and others caused the length of patient stays at HP to be based on obtaining the highest reimbursement from Medicare rather than on actual patient medical needs.

15.   In furtherance of the fraud scheme, **KAREN KALLEN-ZURY,** along with others, certified and caused to be certified Credit Balance Reports to Medicare stating that Medicare had not overpaid HP for services rendered when, in fact, **KALLEN-ZURY** knew

Medicare had overpaid for certain services rendered.

16.     After learning of the government's investigation, and in an effort to conceal their fraudulent scheme, **KAREN KALLEN-ZURY, MICHELE PETRIE,** and others at HP, among other things, would cause false, inaccurate, and misleading information to be added to patient files and related patient documents well after claims for purported patient treatment had been submitted to Medicare.

17.     From in or around at least April 2003 to in or around at least September 2012, **KAREN-KALLEN ZURY, DAISY MILLER,** and **MICHELE PETRIE** caused claims to be submitted to Medicare for services purportedly provided by HP in an amount exceeding $67 million.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-6**
**Wire Fraud**
**(18 U.S.C. §§ 1343 and 2)**

1.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, defendants,

**KAREN KALLEN-ZURY,**
**DAISY MILLER, and**
**MICHELE PETRIE,**

did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be

10

transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

## Purpose of the Scheme and Artifice

3.    It was a purpose of the scheme and artifice for **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE,** and their accomplices to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and who were not eligible to receive such services under Medicare's guidelines; (d) misrepresenting facts to Medicare about HP's costs and expenses; (e) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (f) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices in the form of compensation and other remuneration.

## The Scheme and Artifice

4.    The allegations contained in paragraphs 4-17 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of or Attempted Execution of the Scheme and Artifice

5.    On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants **KAREN KALLEN-ZURY,**

11

**DAISY MILLER**, and **MICHELE PETRIE** did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, as described above, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | December 3, 2007 | Electronic funds transfer of approximately $195,066 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 3 | February 20, 2008 | Electronic funds transfer of approximately $224,350 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 4 | March 11, 2008 | Electronic funds transfer of approximately $246,239 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 5 | June 24, 2008 | Electronic funds transfer of approximately $215,733 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 6 | June 26, 2008 | Electronic funds transfer of approximately $135,707 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 7-8
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, defendants,

12

**KAREN KALLEN-ZURY and**
**DAISY MILLER,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for **KAREN KALLEN-ZURY,** **DAISY MILLER,** and their accomplices to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and who were not eligible to receive such services under Medicare's guidelines; (d) misrepresenting facts to Medicare about HP's costs and expenses; (e) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (f) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices in the form of compensation and other remuneration.

13

## The Scheme and Artifice

4.    The allegations contained in paragraphs 4-17 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of or Attempted Execution of the Scheme and Artifice

5.    On or about the dates set forth below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants, **KAREN KALLEN-ZURY** and **DAISY MILLER**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent Medicare claims, as further described below, representing that HP had provided qualifying psychiatric services to Medicare beneficiaries.

| Count | Approx. Claim Receipt Date | Bene-ficiary Name | Services Billed | Amt. Billed | Claim Number |
|-------|----------------------------|-------------------|-----------------|-------------|--------------|
| 7 | 7/28/2008 | S.M. | Inpatient Psychiatric Services | $15,881 | 2082100533150201 |
| 8 | 11/24/2010 | D.S. | Inpatient Psychiatric Services | $52,869 | 21110301321208NTA01 |

In violation of Title 18, United States Code, Sections 1347 and 2.

14

## COUNT 9
### Conspiracy to Defraud the United States and to Pay and Receive
### Kickbacks in Connection with a Federal Health Care Benefit Program
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around at least April 2003 to in or around at least September 2012, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants,

**KAREN KALLEN-ZURY,**
**CHRISTIAN COLOMA,**
**DAISY MILLER,**
**MICHELE PETRIE,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, including those known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a.     To defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.     To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of

15

any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

c.    To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, including, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by impairing and impeding the lawful functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, and to receive and pay bribes and kickbacks in exchange for securing the attendance of Medicare beneficiaries at HP so that HP could bill Medicare for these beneficiaries.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.    **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and others arranged for bribes and kickbacks to be paid to Patient Brokers in exchange for Patient Brokers referring Medicare beneficiaries to HP.

5.    **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and others paid and caused the payment of hundreds of thousands of

dollars in bribes and kickbacks to Patient Brokers in exchange for referring Medicare beneficiaries to HP.

6.     **KAREN KALLEN-ZURY** and others created and caused to be created bogus contracts between HP and certain Patient Brokers in order to disguise the true nature of HP's relationship with the Patient Brokers.

7.     **KAREN KALLEN-ZURY, CHRISTIAN COLOMA,** and others instructed and caused the Patient Brokers to create false and fraudulent invoices, which were submitted to HP in order to disguise the true nature of HP's relationship with, and the payments to, the Patient Brokers.

8.     **GLORIA HIMMONS** was paid bribes and kickbacks by **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER,** and others at HP in exchange for referring Medicare beneficiaries to HP.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.     In or around winter 2006, **DAISY MILLER** met with a Patient Broker and discussed paying kickbacks and bribes in return for referring patients.

2.     In or around April 2007, **MICHELE PETRIE** met with a Patient Broker and discussed paying kickbacks and bribes in return for referring patients.

3.     On or about December 27, 2007, a fraudulent invoice was received by **CHRISTIAN COLOMA** from a Patient Broker, Keith Humes, using the company name Team Placement Consulting Inc.

17

4. On or about February 5, 2008, a check numbered 11000 in the approximate amount of $15,000 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Team Placement Consulting Inc., c/o Keith Humes.

5. On or about March 4, 2008, a check numbered 11063 in the approximate amount of $15,000 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Team Placement Consulting Inc., c/o Keith Humes.

6. On or about March 25, 2008, a check numbered 11111 in the approximate amount of $2,500 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

7. On or about April 22, 2008, a check numbered 11175 in the approximate amount of $4,800 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

8. On or about May 20, 2008, a check numbered 11251 in the approximate amount of $3,500 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

9. On or about November 5, 2007, Team Placement Consulting Inc. caused a wire payment of $1,000 to be transmitted to **GLORIA HIMMONS**, a Patient Broker.

10. On or about February 8, 2008, Team Placement Consulting Inc. caused a wire payment of $2,000 to be transmitted to **GLORIA HIMMONS**, a Patient Broker.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 10-14
**Payment of Kickbacks in Connection with a Federal Health Care Benefit Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.　　　Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.　　　On or about the dates enumerated below, in Miami-Dade and Broward Counties, in Southern District of Florida and elsewhere, defendants,

### KAREN KALLEN-ZURY
### and
### CHRISTIAN COLOMA,

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Amount | Description |
|-------|-----------------------------|--------|-------------|
| 10 | February 5, 2008 | $15,000 | Check #11000 from Hollywood Pavilion, LLC, to Team Placement Consulting Inc. (c/o Keith Humes) |
| 11 | March 4, 2008 | $15,000 | Check #11063 from Hollywood Pavilion, LLC, to Team Placement Consulting Inc. (c/o Keith Humes) |
| 12 | March 25, 2008 | $2,500 | Check #11111 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |
| 13 | April 22, 2008 | $4,800 | Check #11175 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |
| 14 | May 20, 2008 | $3,500 | Check #11251 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.