## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    )
      Plaintiff,    )
    )
      vs.    )
    ) Case No.: 12-20757 (Martinez, J.)
    )
KAREN KALLEN-ZURY,    )
    )
      Defendant.    )

## MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant, Karen Kallen-Zury, respectfully moves this Court for an order reducing her sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to the newly amended 18 U.S.C. § 3582(c)(1)(A)(i). In light of the Coronavirus pandemic—which in part prompts her requested relief— Ms. Kallen-Zury's motion can and should be handled without oral argument and on an expedited basis so as to save her life.

## INTRODUCTION

Karen Kallen-Zury, who is 67 years old, is currently incarcerated at FCC Coleman in Florida, which has recently experienced rampant sexual abuse and a deadly outbreak of Legionnaires Disease.[1] Ms. Kallen-Zury was convicted in 2013

---

[1] *See, e.g.*, Romy Ellenbogen, *Rape is Rampant at This Women's Prison. Anyone Who Complains is Punished, Lawsuit Says*, The MIAMI HERALD, Dec. 4, 2019, *available at* <https://www.miamiherald.com/news/special-reports/florida-

of healthcare fraud. Ms. Kallen-Zury had no prior criminal history, and her family's medical facility had operated for decades with no accreditation or other legal problems.

Ms. Kallen-Zury suffers from diagnosed and documented high cholesterol, hypertension, severe leg pain, depression, and anxiety. Her condition has deteriorated during her incarceration. Hypertension is a top risk factors for contracting the virus and for developing the worst complications. Her prison medical records are attached as Exhibits to this Motion, as well as a letter from a doctor reciting her peculiar susceptibility to increased danger from the virus.

Thus, Ms. Kallen-Zury's increased risk of contracting the novel Coronavirus in prison—a petri dish of viral contagion—could easily terminate her life given her age and significant medical conditions. Ms. Kallen-Zury was not given a death sentence for her nonviolent first offense, nor does she deserve one.

Following the lead of courts and boards of corrections around the country, this Court can and should reduce Ms. Kallen-Zury's sentence to time served in order to save her life from a pandemic to which she is acutely susceptible.

---

prisons/article237797554.html>; Carli Teproff, *Inmates Diagnosed With Legionnaires Disease at Prison Already Beset By Sex Abuse Allegations*, THE MIAMI HERALD, *Jan. 30, 2020, available at <https://www.miamiherald.com/news/special-reports/florida-prisons/article239771313.html>.*

## FACTUAL BACKGROUND

Ms. Kallen-Zury is a 67-year-old wife and mother who has served seven years of a 25-year sentence for her first-time offense of healthcare fraud, a sentence well beyond the average federal sentence for both violent and nonviolent crimes including kidnapping and terrorism. Indeed, Your Honor remarked at the sentencing hearing that "the guidelines are, you know, I think draconian is understating it. The guidelines are ridiculous....I don't see any... defendants that could live long enough to do the time that is considered by the guidelines." Sentencing Tr. at 3-4, Doc. 569, *United States v. Kallen-Zury*, Case No. 12-20757 (S.D. Fla. 2013) ("Sentencing Tr.").

On March 23, 2020, Ms. Kallen-Zury requested that the warden move to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The undersigned attorney Don Samuel sent a follow-up letter to the warden on Ms. Kallen-Zury's behalf on March 30, 2020. The warden has not responded to the request.

The Coronavirus outbreak has led many experts to note the increased exposure of high-risk populations to disease within prisons, which are ripe environments for contagion.

3

| Health condition | Prevalence of health condition by population | | | |
| --- | --- | --- | --- | --- |
| | Jails | State prisons | Federal prisons | United States |
| Ever tested positive for Tuberculosis | 2.5% | 6.0% | | 0.5% |
| Asthma | 20.1% | 14.9% | | 10.2% |
| Cigarette smoking | n/a | 64.7% | 45.2% | 21.2% |
| HIV positive | 1.3% | 1.3% | | 0.4% |
| High blood pressure/hypertension | 30.2% | 26.3% | | 18.1% |
| Diabetes/high blood sugar | 7.2% | 9.0% | | 6.5% |
| Heart-related problems | 10.4% | 9.8% | | 2.9% |
| Pregnancy | 5.0% | 4.0% | 3.0% | 3.9% |

*See* Prison Policy Initiative, *No Need to Wait for Pandemics*, available at: http://www.prisonpolicy.org/blog/2020/03/06/pandemic/.

Ms. Kallen-Zury is at greater risk than the general population simply because of her age. Moreover, Ms. Kallen-Zury suffers from high cholesterol, hypertension, which have gotten significantly worse while incarcerated. In addition, Ms. Kallen-Zury has developed severe leg pain, for which she has not gotten a proper diagnosis. She wears a brace in order to walk, and doctors think she needs surgery for the leg. She also long has suffered from depression and anxiety. Accordingly, Ms. Kallen-Zury squarely falls within several demographics deemed most highly vulnerable to COVID-19 disease and fatality, according to guidance provided by the Centers for Disease Control and Prevention. *See*, *e.g.*, The Justice Collaborative, *Guidance on COVID-19 in Release Advocacy*, available at

4

http://thejusticecollaborative.com/wpcontent/uploads/2020/03/TJC_CoronavirusDefenseCourts_Onesheet_02.pdf.[2]

Indeed, a leading epidemiologist from Johns Hopkins University, Dr. Chris Beyrer, has stated under oath regarding COVID-19 that the "fatality rate... varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, respiratory disease, diabetes, and immune compromise." (Declaration of Chris Beyrer, MD, MPH, in Support of Persons in Detention and Detention Staff, COVID-19, (hereinafter "Beyrer Decl.).

It is becoming clear that BOP's facilities and staff are facing a tidal wave of infections because BOP houses a large number of prisoners in very tight quarters across this nation. Once the virus spreads inside BOP facilities, there will be little to stop it. BOP has instituted policies to limit entry to outside infestation by,

---

[2] According to the CDC, certain people are more likely to get complications that can result in hospitalization and death, such as pneumonia, bronchitis, and infections. Higher-risk categories are people aged 65 years and older; people who live in a nursing home or long-term care facility; people of all ages with underlying medical conditions, particularly if not well controlled, including people with chronic lung disease or moderate to severe asthma; people who have serious heart conditions; people who are immunocompromised; people with severe obesity (body mass index of 40 or higher); people with diabetes; people with chronic kidney disease undergoing dialysis; and people with liver disease. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html.

among other things, ending inmate visitation and requiring the staff to self-report infections. *See* https://www.bop.gov/coronavirus/covid19_status.jsp. While BOP's strategy certainly is well intentioned, it does not meet the urgency of every health expert and governmental order in the country. Indeed, on Sunday, March 22, the President of the United States discussed openly that he is considering releasing all federal prisoners who are elderly and nonviolent, presumably based on recommendations received by his Coronavirus Task Force. *See* https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3. State and federal prisons and jails have already begun to see the inexorable effects of the porousness of prisons and the conditions inside. *See*, *e.g.*, https://www.nbcnewyork.com/news/coronavirus/21-inmates-17-employees-test-positive-for-covid-19-on-rikers-island-officials/2338242/; https://www.bop.gov/coronavirus/index.jsp. At least one federal judicial officer in California has recently dismissed the efficacy of the current strategies. *See In the Matter of the Extradition of Alejandro Toledo Manrique*, Case No. 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109, at *1 (N.D. Cal., Mar. 19, 2020).

The pandemic has already moved jurisdictions around the country and the world to begin releasing prison populations that are susceptible to COVID-19

exposure. Indeed, experts and officials from as wide a range as Iran,[3] Colombia,

and Israel;[4] more than 400 former U.S. Attorneys, Assistant U.S. Attorneys, and

federal judges;[5] the President of the United States;[6] 14 bipartisan Senators; and the

U.S. Attorney General (who has issued two prisoner release directives)[7] have all

called for sweeping categories of prisoners to be released from incarceration.

Already, cities and counties like Los Angeles, New York, and Baltimore have

---

[3] *Iran Temporarily Frees 85,000 Prisoners from Jail Including Political Prisoners*, Reuters, Mar. 17, 2020, available at: https://www.reuters.com/article/us-health-coronavirus-iran-prisoners/iran-temporarily-frees-85000-from-jail-including-political-prisoners-idUSKBN21410M.

[4] *Colombia May Release Some Prisoners After Deadly Riots Over Coronavirus*, L.A. Times, Mar. 23, 2020, available at: https://www.latimes.com/world-nation/story/2020-03-23/in-colombia-critics-cite-overcrowding-in-coronavirus-linked-prison-riot.

[5] Mar. 27, 2020 Letter to the White House Regarding Mass Commutation Signed by Over 400 Former U.S. Attorneys, Assistants, Judges, available at: https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.

[6] *Releasing Inmates, Screening Staff: U.S. Jails and Prisons Rush to Limit Virus Risks*, Reuters, Mar. 22, 2020, available at: https://www.nytimes.com/reuters/2020/03/22/us/22reuters-health-coronavirus-usa-inmates.html.

[7] Memorandum of U.S. Attorney General Barr to the Bureau of Prisons, dated April 3, 2020, available at: https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000 ("April 3 Barr Memo"); Memorandum of U.S. Attorney General Barr to the Bureau of Prisons, dated Mar. 26, 2020, available at: https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000.

released thousands of prisoners. *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times, Mar. 31, 2020, available at: https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *See also An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues*, N.Y. Times, Mar. 16, 2020, available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html; *L.A. County Releasing Some Inmates from Jail to Combat Coronavirus*, L.A. Times, Mar. 16, 2020, available at: http://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-coronavirus; *NYC Board of Correction Calls on City to Begin Process of Releasing Certain Prisoners in Response to COVID-19*, Sentencing Law and Policy blog, available at: http://sentencing.typepad.com/sentencing_law_and_policy/2020/03/nyc-board-of-correction-calls-on-city-to-begin-the-process-of-releasing-certain-prisoners-asap-in-re.html; https://www.businessinsider.com/la-county-releases-inmates-reduces-arrests-to-blunt-coronavirus-spread-2020-3; https://www.turnto23.com/news/coronavirus/kcso-38-inmates-released-in-response-to-covid-19.

As of this writing, hundreds of federal inmates have officially tested positive for the virus, as have dozens of staff. *See* Federal Bureau of Prisons, Covid-19 Coronavirus, available at:  https://www.bop.gov/coronavirus/.  Due to undertesting,

among other factors, these data are almost surely underreported.  At least six federal prisoners have died of the virus.  *First Federal Inmate to Die of Coronavirus Wrote Heartbreaking Letter to Judge*, NBC News, Apr. 5, 2020, available at: https://www.nbcnews.com/news/us-news/1st-federal-inmate-die-coronavirus-wrote-heartbreaking-letter-judge-n1176961.

With such broad agreement about the untenable risk to prisoners, and evidence of the actual impact, it stands to reason that prisoners particularly susceptible to the virus should be released on compassionate grounds.

Moreover, the terrifying and dangerous situation that Ms. Kallen-Zury faces poses Eighth Amendment and Due Process problems. *See Helling v. McKinney*, 509 U.S. 25 (1993); *Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969). This Court should ensure that Ms. Kallen-Zury is not subjected to the egregious cruelty of the virus by granting her compassionate release. In this case in particular, denying Ms. Kallen-Zury appropriate medical care for her leg and her other conditions and exposing her to an additional dangerous disease poses enormous Fourteenth Amendment concerns.

## ARGUMENT

### I.    The Court Has Jurisdiction to Reduce the Sentence of Ms. Kallen-Zury, Who Has Standing

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could

not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts have the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (HJRes 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has elapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended §

3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant."). There is no requirement that an administrative appeal be disposed of before jurisdiction lies in the district court. *United States v. Mark Resnick*, 14-cr-810, Dkt. No. 461 (S.D.N.Y. Apr. 2, 2020) (Section 3582 jurisdiction exists if 30 days elapse with no BOP response to compassionate release request submitted to counselor); *United States v. Wilson Perez*, 17-cr-513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (finding 30-day exhaustion rule futile where there is already a COVID-19 outbreak at facility and only several weeks remaining on sentence); *United States v. Teresa Ann Gonzalez*, 18-cr-232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (same); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30

11

days from the receipt by the warden of the defendant's facility . . . The Court

therefore has the authority to address the motion of the defendant.").

Here, while there are a few days before jurisdiction fully ripens under the

First Step Act amendments, there is an emergent need for Ms. Kallen-Zury's

request to be decided in light of her significant medical conditions and her age and

the extreme danger posed by the pandemic. Other Courts are recognizing the time

sensitivities associated with this virus ripping exponentially through our

population, and overruling failure to exhaust objections from the Government and

waiving the requirement. *See U.S. v. Perez*, *supra*, Case 1:17-cr-00513-AT

Document 98, filed 04/01/20:

> But the Government questions the Court's authority to act on Perez's
> application, arguing that he has not exhausted the administrative
> remedies under § 3582(c)(1)(A), which requires that a defendant
> seeking compassionate release present her application to the BOP and
> then either (1) administratively appeal an adverse result if the BOP
> does not agree that her sentence should be modified, or (2) wait for 30
> days to pass. Gov't Letter at 3–4.
>
> On March 26, 2020, Perez submitted to the BOP her application for a
> sentence modification. ECF No. 96 at 4. To date, the BOP has not
> acted on that request. The Court holds, however, that Perez's
> exhaustion of the administrative process can be waived in light of the
> extraordinary threat posed—in her unique circumstances—by the
> COVID-19 pandemic. And the Court agrees with the parties that this
> threat also constitutes an extraordinary and compelling reason to
> reduce Perez's sentence to time served. Accordingly, Perez's motion
> is GRANTED.

In *Perez*, the Court found all three bases for waiving exhaustion, and ruled to waive the requirement only six days into Perez's 30-day lapse period. Likewise, Ms. Kallen-Zury should be excused from waiting the full 30 days.

In addition to waiver, there is a clear, wholly applicable exception to the exhaustion requirement. As noted in *Hendricks v. Zenon*, this Court can dispense with the administrative exhaustion requirement where there are "exceptional circumstances of peculiar urgency…." *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *see also* 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the absence of exhaustion of state remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."). The instant case is precisely what *Hendricks* anticipated. Ms. Kallen-Zury presents "exceptional" circumstances of peculiar urgency. Thus, courts are recognizing that in the context of this emergency, strict application of exhaustion requirements, thus exposing people to heightened risk for the virus, is unwarranted.

Further, many courts are granting compassionate release requests. As Judge Furman recently framed the problem, "Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v.*

*Nkanga Nkanga*, 18-cr-713, 2020 U.S. Dist. LEXIS 56188, *1 (S.D.N.Y. Mar. 31, 2020).

Judge Furman declined to release Nkanga.  However, he pointedly indicated he was not addressing a proposed reduction in sentence pursuant to Section 3582, a form of relief Nkanga did not seek but which Kallen-Zury does.  *Id.*, p. 10 n. 4. It's also a form of relief courts are granting across the country to address prison Covid-19 exposure.  *Resnick*, 2020 U.S. Dist. LEXIS 59091, *19-20 (S.D.N.Y. Apr. 2, 2020) (Judge McMahon reducing six-year sentence to time served for 65-year-old man with diabetes); *Perez*, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (Judge Torres reducing sentence to time served for man at MDC with medical complications); *United States v. Zukerman*, 2020 U.S. Dist. LEXIS 59588, *1 (S.D.N.Y. Apr. 3, 2020) (releasing 75-year-old with diabetes from Otisville); *United States v. Campagna*, 16-cr-78, 2020 WL 1489829, *3 (S.D.N.Y. Mar. 27, 2020) (granting motion for Covid-19 compassionate release, substituting outstanding term of incarceration with home confinement for man with compromised immune system); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718, *2 (E.D. Pa. Apr. 1, 2020) (reducing 20-year sentence to time served for man with diabetes and high blood-pressure); *United States v. Jepsen*, No. 3:19-cv-00073(VLB), 2020 U.S. Dist. LEXIS 57007, *12 (D. Conn. Apr. 1, 2020) (granting compassionate release to immunocompromised

14

defendant); *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 U.S. Dist. LEXIS 57962, *2 (D. Conn. Apr. 2, 2020) (granting release to immunocompromised defendant); *United States v. Teresa Ann Gonzalez*, 18-cr-232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (reducing 10-month sentence to time served for 64-year-old defendant with chronic obstructive pulmonary disease); *United States of America v. Pedro Muniz*, 09-cr-0199, 2020 U.S. Dist. LEXIS 59255, *5 (S.D. Tex. Mar. 30, 2020) (reducing 188-month sentence to time served for man with diabetes, renal disease and hypertension); *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Powell*, No. 1:94-cr-316-ESH, Dkt. No. 98 (Mar. 28, 2020) (granting unopposed motion for compassionate release in light of Covid-19 and finding it "would be futile" to require defendant to first exhaust administrative remedies).

It's not only compassionate release; courts are relaxing pre- and post-trial detention decisions across the board to account for the pandemic.  See *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (sua sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis, which public health authorities predict will especially impact

immigration detention centers"); *United States v. Johnny Grobman*, 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) (granting rare prisoner release pending sentencing under 18 U.S.C. § 3143 for 46-year-old man with Lupus); *United States v. Stephens*, 2020 WL 1295155, *2 (S.D.N.Y. Mar. 18, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Barkman*, Case No. 19-cr-00052, 2020 U.S. Dist. LEXIS 45628, *10-11 (D. Nev. Mar. 17, 2020) (order granting emergency motion to modify intermittent confinement as a condition of probation); *United States v. Avenatti*, No. 8:19-cr-61, 2020 U.S. Dist. LEXIS 56258, *1(C.D. Cal. Mar. 25, 2020) (sua sponte inviting Avenatti to reapply for release after denying his motion for the release, stating, [i]n light of the evolving nature of the Covid-19 pandemic, particularly in the greater New York City area, the Court invites Avenatti to apply ex parte for reconsideration of the Court's order" denying release); *United States v. Michaels*, 8:16-cr-76, 2020 U.S. Dist. LEXIS 56239, *1 (C.D. Cal. Mar. 26, 2020) (finding that Covid-19 is a "compelling reason" for release and that "Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Harris*, 19-cr-356, 2020 U.S. Dist. LEXIS 55339, *2 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety

16

than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources" . . . "[T]he Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement."); *United States v. Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte order extending time to self-surrender because "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *In re Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109, *1 (N.D. Cal. Mar. 19, 2020) (authorizing release of former Peruvian president who is fighting extradition back to Peru to face trial on corruption charges as "[t]he risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail"); *United States v. Mclean,* No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the

statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release.").

## II.     The Requested Relief Is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement

### A.     Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Medical and Age-Related Circumstances

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant

18

was convicted have been later amended to provide a shorter term of imprisonment.

*Id*. at 55–56 (emphasis added).

Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, whether "there is a justification for reducing a term of imprisonment." *Id*. at 56.

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly *compelling situations*." *Id*. (emphasis added). Notably, Congress imposed no limitations on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55–56 (1983).

Unfortunately, the safety valve rarely operated as intended.[8]  As a result,

Congress, through the First Step Act, allowed direct access to the sentencing court

once an inmate's request to the BOP has been exhausted.

Following the First Step Act's passage, courts have held that they are vested

with discretion to find "extraordinary and compelling reasons" for a reduction in

sentence that go beyond the technical requirements set forth in BOP regulations

and USSG  § 1B1.13, application note 1 (setting forth such "extraordinary and

compelling reasons" as "terminal illness" and a guideline that a prisoner over 65

years old should be release early when he has "served at least 10 years or 75

percent of her sentence"). *See United States v. Redd*, 97-cr-6, 2020 U.S. Dist.

LEXIS 45977 at *7-12 (E.D. Va. Mar. 16, 2020) (district courts vested with

discretion to find "extraordinary and compelling reasons" beyond the technical

requirements of the guidelines manual or BOP regulations); *Cantu*, 2019 WL

2498923, at *5; *Cantu-Rivera*, 2019 WL 2578272, at *2 n.1; *United States v. Beck*,

No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While

the old policy statement provides helpful guidance, it does not constrain the

---

[8] *See, e.g*., The Answer is No: Too Little Compassionate Release in US Federal
Prisons, Human Rights Watch, 2 (Nov. 2012),
https://www.hrw.org/sites/default/files/reports/ us1112ForUploadSm.pdf (noting
that between 1992 and 2012, the average annual number of prisoners who received
compassionate release following a motion by the BOP was less than two dozen).

Court's independent assessment of whether 'extraordinary and compelling reasons'
warrant a sentence reduction under § 3582(c)(1)(A)(i).").

**B.    Extraordinary and Compelling Reasons Warrant a Reduction in
        Ms. Kallen-Zury's Sentence**

Given Ms. Kallen-Zury's severe preexisting conditions, which are uniquely
dangerous in light of the COVID-19 pandemic; coupled with her age, which is
within the most at-risk age range for the virus, there is a very real possibility her
exposure to a pandemic disease will kill Ms. Kallen-Zury in prison. Ms. Kallen-
Zury's circumstances would constitute "extraordinary and compelling reasons"
even before the First Step Act's passage under USSG § 1B1.13, but now that the
court has discretion to determine which set of facts constitutes "extraordinary and
compelling reasons," there is simply no reason why increased exposure to, and risk
of fatality from, a pandemic outbreak would not qualify.

**C.    The Remaining Criteria for Reducing the Length of Ms. Kallen-
        Zury's Sentence Weigh Strongly in Favor of a Sentence Reduction**

In determining whether Ms. Kallen-Zury's sentence should be reduced, the
Court must decide, *inter alia*, whether she presents a danger to the safety of any
other person or to the community, as provided in 18 U.S.C. § 3142(g). USSG §
1B1.13 (2). If she does not, the Court looks to the factors outlined in 18 U.S.C. §
3553(a). All these factors weigh strongly in favor of relief in Ms. Kallen-Zury's
case.

1.     *Ms. Kallen-Zury Is Not a "Danger"*

Ms. Kallen-Zury is not a danger to the community. She has been a highly respected licensed nursing home administrator since 1984 and had never been investigated or disciplined until the instant offense.[9] She also is a devoted wife to her husband of 26 years and their adoptive son, who has special needs. At the time of their son's diagnosis of severe ADHD, Ms. Kallen-Zury stepped back from the family business to care for him, only returning after her father's death prompted her siblings and mother to request that she step back in. In addition, Ms. Kallen-Zury had no scored criminal history prior to the offense, which was nonviolent. If released, Ms. Kallen-Zury intends to reside with her husband and son, who have space for her to be properly quarantined and who have the ability to provide her care for her various medical problems at no further expense to BOP.

2.     *The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief*

Ms. Kallen-Zury has accepted responsibility for her crime and has expressed remorse. The punishment she has received is sufficient to deter future misconduct—indeed, it was determined by the prosecutors that the time she has served would have been sufficient when they offered her a seven-year plea deal

---

[9] As indicated by the publicly available license verification data from the Florida Dep't of Health, *available at* <https://appsmqa.doh.state.fl.us/MQASearchServices/HealthCareProviders/LicenseV erification? LicInd=1309&ProCde=801&org=KALLEN-ZURY%2C%20KAREN> (last accessed March 2, 2020).

before trial. It is sheer nonsense to contend that the release of a 67-year-old woman

suffering from severe medical conditions during the heart of a pandemic outbreak

after seven years in prison will in any way encourage future white-collar criminals.

And the Sentencing Commission's empirical research establishes the point. As age

increases, recidivism by every measure decreases. *See* United States Sentencing

Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, p. 30

(December 2017), available at http://www.ussc.

gov/sites/default/files/pdflresearch-and-publications/research-publications/20

17/20171207 Recidivism-Age.pdf ("Among offenders released younger than age

21, 67.6 percent were rearrested *compared to 13.4 percent of those released age 65*

*or older*. The pattern is consistent across age groups, as age increases recidivism

by any measure declined. Older offenders who do recidivate do so later in the

follow-up period, do so less frequently, and have less serious recidivism offenses

on average.") (emphasis added).

    **D.**    **Ms. Kallen-Zury Deserves Mercy**

    With the passage of the First Step Act, Congress emphasized the imperative

of reducing unnecessary incarceration and avoiding unduly punitive sentences that

do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019

WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019).

Ms. Kallen-Zury has a son, Aaron, who desperately needs her help, as her absence has left him without his primary support and caused his condition to worsen. After her conviction when he was 16, Aaron's life took a terrible turn for the worse. He turned to drugs to help him cope with the emotional pain, and even was incarcerated at one point. He quit college. He has recently started turning his life around, but he desperately needs a mother figure in his life. Ms. Kallen-Zury also has a husband who has been in dire medical straits since her conviction. She has a loving home to go to where she can be protected from COVID-19 infection and treated for her other ailments. Ms. Kallen-Zury's infirmities have left her completely hopeless in prison and a prey to infectious disease. This Court did not sentence her to die in prison. She deserves mercy.

## CONCLUSION

For all the foregoing reasons, Ms. Kallen-Zury respectfully requests that the Court take this opportunity to grant a reduction in her sentence based on extraordinary and compelling reasons and reduce her sentence to time served.

RESPECTFULLY SUBMITTED,

/s/ *Don Samuel*
DONALD SAMUEL, ESQ.

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225

/s/ *Hanna Liebman Dershowitz*
HANNA LIEBMAN DERSHOWITZ

THE ALEPH INSTITUTE
543 Maple Street, Suite 1
Brooklyn, NY 11225
(347) 436-7518
hanna@aleph-institute.org

/s/ *Jack Goldberger*
JACK GOLDBERGER
Florida Bar No.: 262013

ATTERBURY, GOLDBERGER & WEISS, P.A.
250 Australian Ave South, Ste 1400
West Palm Beach, FL 33401-5012
Phone: 561-659-8300
jgoldberger@agwpa.com

25

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 12-20757-CR-MARTINEZ

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**KAREN KALLEN-ZURY et al,**

     **Defendants,**

_____/

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of April, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

     Karen Rochlin, A.U.S.A.
     U.S. Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

     /s/ *Jack Goldberger*
     JACK GOLDBERGER
     Florida Bar No.: 262013

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No.: 12-20757-CR-MARTINEZ

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

KAREN KALLEN-ZURY,

      Defendant.

_____/

## SERVICE LIST

DANIEL L. RODRIGUEZ
CA Bar No.: 170229
**LAW OFFICES OF DANIEL L. RODRIGUEZ**
2173 Salk Avenue, Suite 250
Carlsbad, CA 92008
Ph: 619-922-3763
Fax: 866-294-9121
drodlaw@me.com
*Counsel for Daisy Miller*

WILFREDO A. FERRER
**U.S. ATTORNEY'S OFFICE**
99 N.E. 4th Street, Suite 530
Miami, FL 33132

AMBER DONNER
CHRIS GAINOR
**GAINOR & DONNER**
799 Brickell Plaza
Suite 606
Miami, FL 33131
Ph: 305-358-1064
Fax: 305-372-1644
adonner@gainorlaw.org
*Counsel for Christian Coloma*

ROBERT ZINK
**US DEPARTMENT OF JUSTICE**
Criminal Division, Fraud Section
1400 New York Ave NW FL 4
Washington, DC 20005-2107
Ph: 202-514-0095
Robert.Zink@usdoj.gov

27